**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COX COMMUNICATIONS, INC., *et al.*,<br><br>*Movants*,<br><br>v.<br><br>THE RECORDING INDUSTRY ASSOCIATION OF AMERICA,<br><br>*Respondent*. | Case No. 1:19-mc-00144-APM<br><br>Underlying Litigation:<br>*Sony Music Entertainment, et. al. v. Cox Communications, Inc., et al.*, Case No. 18-cv-00950-LO-JFA (E.D. Va.)<br><br>***ORAL ARGUMENT REQUESTED*** |

**COX'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO COMPEL THE RIAA'S COMPLIANCE WITH COX'S
<u>SUBPOENA *DUCES TECUM*</u>**

**<u>PARTIALLY REDACTED</u>**

**I.     INTRODUCTION**

Cox Communications, Inc. and CoxCom, LLC ("Cox") brings this motion to compel the Recording Industry Association of America ("RIAA") to produce documents that have critical importance to a copyright infringement litigation pending in the Eastern District of Virginia.

Cox, an Internet service provider ("ISP"), has been sued for secondary copyright infringement by 53 individual plaintiffs, including some of the largest record labels and music publishers in the world (the "*Sony* plaintiffs"). *Sony Music Entm't, et al. v. Cox Commc'ns, Inc., et al.*, Case No. 1:18-cv-00950-LO-JFA (E.D. Va.) (the "*Sony* litigation"). The *Sony* plaintiffs allege that subscribers to Cox's Internet service infringed 10,478 of their works by downloading them without authorization through BitTorrent or other peer-to-peer file sharing technologies available on the Internet between 2013 and 2014. The *Sony* plaintiffs seek to hold Cox liable for vicarious and contributory copyright infringement in connection with its provision of Internet service to these subscribers, and they seek in excess of $1.5 billion in statutory damages against Cox.

Cox subpoenaed the RIAA in the underlying litigation because it acted as the record label plaintiffs' agent in investigating alleged copyright infringement by Cox's Internet subscribers and sending infringement notices to Cox. The RIAA in turn engaged a technology company called MarkMonitor to track the activities of Internet subscribers using peer-to-peer file sharing technologies and send copyright infringement notices to ISPs, including Cox. These infringement notices serve as the exclusive basis for the *Sony* plaintiffs' allegations of direct infringement by Cox's Internet subscribers—a key element of proving their secondary copyright infringement case against Cox.

During the timeframe at issue in this case, five major ISPs (Comcast, Time Warner, Cablevision, AT&T, and Verizon, which together provided Internet service to the vast majority of Internet users in the United States), content owners, the RIAA, and the Motion Picture Association of America ("MPAA") entered into an inter-industry agreement to address and deter online copyright infringement. That agreement was memorialized in a Memorandum of Understanding ("MOU") signed by the participating parties.[1] The MOU established "[a] reasonable, alert-based approach [to] help to protect legal rights granted by copyright and stem the unlawful distribution of copyrighted works, while providing education, privacy protection, fair warning, and an opportunity for review that protects the lawful interests of consumers" known as the "Copyright Alert System" or "CAS."[2]

The RIAA and many of the *Sony* plaintiffs (who at the time collectively owned the rights to the majority of the sound recordings and musical compositions in the United States) were signatories to this MOU and participants in CAS. The CAS MOU required participating ISPs to develop, implement, and enforce copyright alert programs under which copyright owners would send infringement notices to participating ISPs (to be forwarded to subscribers). The CAS MOU also set out steps that ISPs would take in response to multiple notices of infringement relating to

---

[1] The participating ISPs were SBC Internet Services, Inc., BellSouth Telecommunications, Inc., Southwestern Bell Telephone Company, Pacific Bell Telephone Company, Illinois Bell Telephone Company, Indiana Bell Telephone Company, Incorporated, Michigan Bell Telephone Company, Nevada Bell Telephone Company, The Ohio Bell Telephone Company, Wisconsin Bell, Inc., The Southern New England Telephone Company, and BellSouth Telecommunications, Inc. (the AT&T Inc. companies); Verizon Online LLC, Verizon Online LLC — Maryland, and Verizon Online Pennsylvania Partnership (the Verizon companies); Comcast Cable Communications Management, LLC; CSC Holdings, LLC (solely with respect to its cable systems operating in New York, New Jersey, and Connecticut) (the Cablevision systems); and Time Warner Cable Inc. *See* Declaration of Diana Hughes Leiden ("Leiden Decl."), Ex. G (Memorandum of Understanding or "MOU", Plaintiffs_00286200) at Plaintiffs_00286220-36.
[2] *See* Leiden Decl., Ex. G (MOU) at Plaintiffs_00286200.

2

a single subscriber, and established limits to the number of notices an ISP was required to process. The RIAA (and the individual *Sony* plaintiffs who had signed onto CAS) entered into separate agreements with each participating ISP on behalf of its members, which governed how each ISP would implement the CAS and how the ISPs would report data to the RIAA and MPAA.[3] Furthermore, specific sections of the CAS MOU required ISPs to generate and send the RIAA monthly reports concerning the number of alleged infringements by accused subscribers.

Cox was not a signatory to the CAS, and instead had already implemented its own multi-step, or "graduated" response for responding to copyright infringement notices sent to Cox by rights holders years before CAS was implemented by the other ISPs. In fact, Cox's graduated response was a more stringent response to combating alleged infringements than CAS in several respects, including the fact that, unlike CAS, Cox's graduated response process resulted in the termination of service for certain "repeat infringers."

This motion to compel concerns the production of the reports and data generated by ISPs and sent to the RIAA regarding ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that were intended to allow the RIAA to assess the effectiveness of CAS over time. Cox met and conferred with the RIAA regarding its objections to the document subpoena, and the parties were able to resolve a number of disagreements without Court intervention. The RIAA, however, has flatly refused to produce *any* documents concerning CAS and its implementation by ISPs, claiming it is irrelevant. But the court where the underlying case is pending has already determined that CAS and how it was implemented *is relevant* to the *Sony* plaintiffs' claims, and in fact ordered the *Sony* plaintiffs to produce relevant documents in their

---

[3] *See* Leiden Decl., Exs. H-L (Implementation Agreements).

possession.[4]  And the effectiveness of CAS—which was endorsed by the RIAA and many of the *Sony* plaintiffs—at combating online copyright infringement is undeniably relevant to the underlying litigation in light of the *Sony* plaintiffs' claims that Cox's more stringent graduated response was an insufficient response to the infringement notices at issue.  Notably, the RIAA has never asserted that searching for and producing these documents and communications from a narrow period of time would be unduly burdensome.

The RIAA has documents that are critically important to Cox's defense of the underlying $1.5 billion copyright infringement case, which should be produced.  Cox respectfully requests that the Court grant this motion.

## II.     RELEVANT PROCEDURAL HISTORY

On January 7, 2019, Cox subpoenaed the RIAA, seeking documents relating to, among other things:

- "All Documents and Communications concerning the implementation of the CAS by ISPs and the impact, if any, on the scope of copyright infringement through BitTorrent or other peer-to-peer networks, the number of copyright infringement notices being sent by You, on Your behalf, or on behalf of any of the Plaintiffs, and the number of terminations by ISPs based on their receipt of notices;" and

- "All Documents concerning CAS or any proposed inter-industry agreement concerning the handling of notices of copyright infringement."[5]

On January 8, 2019, the *Sony* plaintiffs' counsel accepted service of the Subpoena on behalf of the RIAA and subsequently served written objections and responses on behalf of the RIAA on January 22, 2019, unilaterally refusing to produce documents responsive to these requests on the grounds that they were overly broad and sought information that was privileged and not within the

---

[4] *See* Leiden Decl., Ex. D (Jan. 25, 2019 H'rg Tr. at 61:20-62:9 (ordering the *Sony* plaintiffs to produce the CAS MOU, CAS implementation agreements, and documents sufficient to show whether each Plaintiff was a signatory or member of CAS)).
[5] Leiden Decl., Ex. B (RIAA Subpoena) RFP Nos. 19-20.

4

RIAA's possession.[6]  The *Sony* plaintiffs took the position that because "CAS was a private agreement in which Cox did not participate," "[i]t has no bearing on Cox's liability or damages for the claims alleged in this case."[7]  On February 12, 2019 Cox followed up with a letter outlining the relevance of the CAS-related documents and requested that the RIAA withdraw its objections.[8]  The RIAA responded on February 22, 2019, refusing to produce any responsive documents and again claiming that the requested documents were irrelevant.[9]  The parties held a meet and confer on these requests and the RIAA stood on its objections.[10]  Cox subsequently served a discovery request on the *Sony* plaintiffs seeking "[a]ll Documents and Communications concerning the impact, if any, on levels of infringement from the CAS, including data, reports, studies, or analyses."[11]  In July 2019, the *Sony* plaintiffs objected to this request and refused to provide any responsive documents, claiming again that CAS was irrelevant and that the request sought privileged information.[12]  Cox met and conferred with the RIAA again in late June 2019 and was able to resolve other production issues without Court intervention.  However, as of the date of this filing, the RIAA has not produced any documents responsive to the requests at issue.[13]

### III.   ARGUMENT

---

[6] Leiden Decl., Ex. C (RIAA Responses to Subpoena) RFP Nos. 19-20.
[7] *Id*.
[8] *See* Leiden Decl., Ex. E (Feb. 12, 2019 letter).
[9] Leiden Decl., Ex. F (Feb. 22, 2019 letter).
[10] Leiden Decl., ¶ 9.
[11] Leiden Decl., Ex. M (Cox's May 31, 2019 document requests).
[12] Leiden Decl., Ex. N (*Sony* plaintiffs' July 1, 2019 objections and responses to Cox's May 31, 2019 document requests).
[13] Leiden Decl., ¶ 19.  The *Sony* plaintiffs previously produced the CAS MOU and the implementation agreements, as ordered by the court in the underlying litigation.  *Id*., ¶ 8.

A. **Legal Standard**

A party has a right to subpoena any person to produce documents for inspection and copying. *See* Fed. R. Civ. P. 45(a). Because courts apply the standards of Rule 26 to subpoena requests under Rule 45, *Coleman v. District of Columbia*, 275 F.R.D. 33, 36 (D.D.C. 2011), the scope of permissible discovery under Rule 45 is broad. *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 452 (D.D.C. 2002) ("Generally, courts construe the scope of discovery liberally in order to ensure that litigation proceeds with the fullest possible knowledge of the issues and facts before trial." (quotation marks omitted)). Therefore, "a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Hesco Bastion Ltd. v. Greenberg Traurig LLP*, No. 09-0357, 2009 WL 5216932, at *4 (D.D.C. Dec. 23, 2009).

Here, Cox's subpoena to the RIAA seeks information that falls well within the scope of permissible discovery, and the grounds that the RIAA offers for refusing to comply are baseless. An order directing the RIAA to comply is therefore necessary and proper.[14]

B. **The RIAA Should Be Compelled to Produce Reports Concerning the Effectiveness of CAS**

The monthly reports that CAS-participating ISPs were required to generate and send to the RIAA are directly responsive to Cox's requests, squarely in the RIAA's possession, and relevant to the underlying litigation.

The CAS MOU states:

> "[E]ach Participating ISP *shall* provide reporting of non-personally identifiable information to the Content Owner Representatives identifying . . . information about those Subscribers who have received Copyright Alert(s) during the applicable calendar month

---

[14] Discovery in the *Sony* litigation ended on July 2, 2019. However, this District permits the filing of motions to compel after the close of discovery. *Barnes v. D.C.*, 289 F.R.D. 1, 20 (D.D.C. 2012).

6

and the total number of alleged P2P Online Infringements by each such Subscriber." (emphasis added).[15]

The RIAA is defined in the CAS MOU as one of these Content Owner Representatives.[16] The CAS MOU also states that the reports and data produced by the ISPs may be used "to analyze the effectiveness of the Copyright Alert program."[17] Additionally, the ISP Implementation Agreements each had requirements concerning reporting the data. All of the ISP Implementation Agreements ███████████████████████████████████████████████████████████████████████████████████[18] What differed between the Implementation Agreements was what information each ISP would include in the report and the format it would take:

- Comcast, Time Warner, and AT&T agreed ███████████████████████████████████████████[19]

- Verizon agreed ███████████████████████████████████████████[20]

---

[15] *See* Leiden Decl., Ex. G (CAS MOU at Section 4(I)).
[16] *Id*. at Section 1.
[17] *Id.* at Section 4(I).
[18] *See e.g.,* Leiden Decl., Ex. H (AT&T Implementation Agreement, Section 6(E)); Ex. I (Comcast Implementation Agreement, Section 6(E)); Ex. J (Time Warner Implementation Agreement, Section 6(E)); Ex. K (Verizon Implementation Agreement, Section 6(E)); Ex. L (CSC Holdings Implementation Agreement, Section 6(E)) (requiring an alternate form of report).
[19] *See* Leiden Decl., Ex. I (Comcast Implementation Agreement, Section 6(E) and Attachments E-1 & E-2); *Id.*, Ex. J (Time Warner Implementation Agreement, Section 6(E)) and Attachments E-1 & E-2; *Id.*, Ex. H (AT&T Implementation Agreement, Section 6(E) & Attachment E-1). ███████████████████████████████████████
[20] Leiden Decl., Ex. K (Verizon Implementation Agreement, Section 6(E) & Attachment E-2).

- Rather than provide monthly reports, Cablevision agreed ███████████ ██████████████████████████████████████████.

Because the ISPs all agreed to ████████████████████████████████ ████████████████████████████, this data would specifically permit the RIAA to assess whether CAS was effective at curbing piracy by "repeat infringers."

The RIAA's assertion that these documents are irrelevant to the *Sony* litigation has no merit. In the underlying litigation, the *Sony* plaintiffs have argued that Cox "refused to take reasonable measures to curb its customers from using its Internet services to infringe on others' copyrights."[22] At the same time, the RIAA and many of the *Sony* plaintiffs signed onto the CAS, which was touted as the standard participating rights holders and ISPs were to abide by for detecting copyright infringements, for sending notices of infringements to ISPs, and for how ISPs were to interact with their subscribers in response to receiving notices. Cox has taken the position that its graduated response was a more effective method for combating alleged copyright infringement than the CAS because, among other things, it provided for the termination of certain "repeat infringers," while the *Sony* plaintiffs have argued that Cox's graduated response was an insufficient reaction to notices of copyright infringement sent by the RIAA on the *Sony* plaintiffs' behalf. The effectiveness of the measures detailed in the CAS and that the ISPs implemented for responding to the copyright infringement notices—endorsed by the RIAA and the *Sony* plaintiffs—is therefore highly relevant to the *Sony* litigation.

Additionally, the RIAA has provided no basis to find that these monthly reports, showing ███████████████████████████████████████████████████████████, would contain

---

[21] *See* Leiden Decl., Ex. L (CSC Holdings Implementation Agreement, Section 6(E)).
[22] *Id.*, Ex. A (ECF 136, Amended Complaint ¶ 2).

any privileged information.[23] Moreover, they would not include any personally-identifying information given that ███████████████████████████████████████████ ██████████████████.[24] And given that the ISPs sent these reports to the RIAA only once a month, there is no basis to find that it would be overly burdensome for the RIAA to search for and produce these reports. Finally, given that Cox sought these documents from the *Sony* plaintiffs, who have flatly refused to provide them, it is appropriate for the Court to order the Sony plaintiffs' agent and the recipient of the reports at issue, the RIAA, to produce them.

## IV. CONCLUSION

The RIAA is in possession of reports and data relevant to the effectiveness of CAS that are highly relevant to the underlying *Sony* litigation. Cox respectfully requests the Court grant its motion to compel the RIAA to produce documents and communications related to other ISP's implementation of the CAS, specifically the reports participating ISPs were contracted to generate under the CAS MOU.

Dated: August 21, 2019

Respectfully submitted,

*/s/ Thomas M. Buchanan*
Thomas M. Buchanan (Bar No. 337907)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

---

[23] To the extent that they did, the RIAA should be ordered to update its privilege log that was initially provided to Cox on April 26, 2019, because the privilege log does not reflect the reports that Cox is seeking from the RIAA. Leiden Decl., ¶ 16.

[24] *See e.g.*, Leiden Decl., Ex. K (Verizon Implementation Agreement, Attachment E-2).

*Attorney for Petitioners Cox Communications, Inc. and CoxCom, LLC*

## **CERTIFICATE OF SERVICE**

I certify that on August 21, a copy of the foregoing Movant's Motion to Compel Compliance with Cox's Subpoena *Duces Tecum* was served by e-mail and via Federal Express on the following:

Jeffrey M. Gould
Oppenheim + Zebrak, LLP
4530 Wisconsin Avenue, N.W., 5th Floor
Washington, DC 20016
Tel.: (202) 851-4526
Email: jeff@oandzlaw.com

*Counsel for both the Respondent Recording
Industry Association of America and
Plaintiffs in the underlying action
pending in the Eastern District of Virginia
(Case No. 18-cv-00950-LO-JFA).*

*/s/ Thomas M. Buchanan*
Thomas M. Buchanan (Bar No. 337907)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Movants Cox Communications,
Inc. and CoxCom, LLC*